IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| KATHRYN WESTREICHER, et al., | : | Case No. 1:20-cv-191 |
| Plaintiff, | : | Judge Matthew W. McFarland |
| v. | : | |
| MERRICK GARLAND, United States Attorney General, et al., | : | |
| Defendants. | : | |

## ORDER AND OPINION

This case is before the Court on the parties' cross motions for summary judgment on the certified administrative record. Upon review of the record and the parties' briefs, the Court **GRANTS** the Government's motion for summary judgment (Doc. 18) and **DENIES** Plaintiffs' motion for summary judgment (Doc. 13).

## FACTS

Plaintiff Erick Westreicher is a citizen of Peru. In August 2005, he entered the United States using a B-2 visitor's visa. On January 30, 2008, Erick married Geralys Martinez. In September 2008, Geralys filed a Form I-130 Petition for Alien Relative, under section 204 of the Immigration and Nationality Act (INA). (Certified Administrative Record ("CAR"), Doc. 11, Pg. ID 1062.) On January 30, 2009, the couple's one-year anniversary, the United States Citizenship and Immigration Services (USCIS) interviewed Geralys and Erick. (*Id.* at Pg. ID 1201.)

To show that their marriage was bona fide, Geralys submitted various documents, including her Ohio identification card and magazines with their marital address, a letter from their church, a paystub, a bank letter, a checking statement, and pictures. (*Id.* at Pg. ID 1299-1318.) At the interview, Geralys and Erick claimed to live together at the same address on Ross Road in Fairfield, Ohio. Geralys was five months pregnant and the couple "strongly implied" that Erick was the father. (*Id.* at Pg. ID 810.) By the end of the interview, the interviewing officer found the relationship questionable. (*Id.*)

The USCIS Fraud Detection and National Security Directorate (FDNS) unit investigated. The FDNS discovered court records showing that, in June 2008—when Geralys claimed to live with Erick on Ross Road—an eviction action had been filed against her relating to a different address, located on Woodbridge Boulevard in Fairfield. The investigation also inquired into a third address, this one on Rubicon Place in Cincinnati, Ohio. The Rubicon Place landlord reported that Geralys lived there with her boyfriend, Felix Ramirez. Geralys and Felix had signed a lease for the Rubicon Place address in January 2009—two days before the Form I-130 interview when Geralys and Erick had claimed that they lived together on Ross Road. In May 2009, a few months after moving in with Felix, Geralys gave birth to a child. The birth certificate listed Felix as the father. This, even though she had implied the child was Erick's during the interview. She had also had a child two months before she married Erick, with someone other than Erick. (*Id.*)

On March 1, 2020, USCIS issued a Notice of Intent to Deny (NOID) the Form I-130. (*Id.*) It stated that, although Geralys had submitted some documentation in support of

2

her marriage to Erick, other evidence suggested the two of them had "never resided together in marital union." (*Id.* at Pg. ID 1278.) The NOID cited the suspicious circumstances of the wedding, where Geralys's half-sister married Erick's brother at the same place and same day as them. Furthermore, Geralys had obtained a temporary driver's license on March 13, 2009, listing the Rubicon Place address, where Erick had never lived. The Rubicon Place landlord had confirmed that she lived there with Felix since February 2008—a month after she had married Erick—and did not recognize pictures of Erick. The NOID gave her 30 days to respond in writing. (*Id.* at Pg. ID 1279.)

Geralys responded to the NOID. She included documentation showing that the Rubicon Place lease had begun in February 2009, not February 2008 as the NOID had reported. (*Id.* at Pg. ID 893.) Nevertheless, on April 5, 2010, USCIS denied Geralys's Form I-130. She appealed that decision to the Board of Immigration Appeals (BIA). Because the record was incomplete, the BIA remanded the case to USCIS without determining the merits. Over the next few years, USCIS interviewed the couple two more times and eventually issued another NOID. (*Id.* at Pg. ID 811.) Based on all the testimony and documentation in the record, USCIS concluded that Geralys had not met her burden of proof in demonstrating the bona fide nature of her marriage to Erick. Thus, on November 8, 2013, USCIS denied her Form I-130. (*Id.* at Pg. ID 815.) A year later, Erick and Geralys divorced. (*Id.* at Pg. ID 793.)

About two weeks after the divorce, Erick married his current wife, Plaintiff Kathryn Westreicher. (*Id.*) Kathryn is also a United States citizen. On February 26, 2015, she filed an I-130 petition on Erick's behalf. (*Id.* at Pg. ID 908-09.) Later that year, USCIS

3

interviewed the couple. This time, USCIS was left with the impression that the marriage was bona fide. But instead of approving Kathryn's petition, USCIS indicated its intent to deny her petition. (*Id.* at Pg. ID 909.)

The reason was Erick's prior marriage to Geralys. USCIS had found that union to not be a bona fide relationship, but rather "likely entered into solely for the purpose of obtaining immigration benefits." (*Id.* at Pg. ID 916.) That meant that § 204(c) of the INA, 8 U.S.C. § 1154(c), prohibited approval of the later petition. (*Id.*) Kathryn and Erick responded to the NOID, to no avail. The agency found that § 204(c) prohibited approval of the petition, based on Erick's prior marriage to Geralys. (*Id.* at Pg. ID 819.)

Both decisions—the denial of Geralys's petition and the denial of Kathryn's petition—were appealed. On December 5, 2017, the BIA affirmed both decisions. (*Id.* at Pg. ID 773-77 (Kathryn's petition); Pg. ID 1009-12 (Geralys's petition).) The decision affirming the denial of Geralys's petition found that the record below was insufficient to establish by a preponderance of the evidence that her marriage to Erick was valid for immigration purposes. (*Id.* at Pg. ID 1011-12.) The decision pertaining to Kathryn's petition concluded that Erick married Geralys for the primary purpose of evading immigration laws. On that ground, the BIA found § 204(c) barred approval of Kathryn's petition. (*Id.* at Pg. ID 777.)

Kathryn and Erick filed this lawsuit to challenge the agency's decision denying their Form I-130. (Am. Compl., Doc. 3, ¶ 1.)

## LAW AND ANALYSIS

The Administrative Procedure Act (APA), § 702, gives district courts jurisdiction

4

over claims of agency wrongdoing. 5 U.S.C. § 702; *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006); *Qing Tian v. United States*, No. 1:15CV264, 2017 WL 2964910, at *2 (S.D. Ohio July 12, 2017). When analyzing motions for summary judgment under Fed. R. Civ. P. 56, courts only consider evidence within the administrative record. *Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480 (6th Cir. 1999). A court reviews agency action to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). An agency decision is arbitrary and capricious if it fails to consider relevant evidence or articulate a satisfactory explanation for its decision. *Bangura*, 434 F.3d at 502. Importantly, however, even when an agency explains its decision with less than ideal clarity, a district court will not reverse that decision as long as it can reasonably discern how the agency got there. *Alaska Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004).

Here, the agency issued decisions on two different petitions. First, USCIS denied Geralys's petition. (CAR, Doc. 11, 9/18/2013 NOID, Pg. ID 1062; 11/08/2013 USCIS Decision, Pg. ID 1046; 12/5/2017 BIA Decision, Pg. ID 1009-12.) Later, it did the same for Kathryn's petition. (*Id.*, 1/11/2016 NOID, Pg. ID 908; 08/04/2016 Decision, Doc. 11, Pg. ID 808; 12/05/2017 BIA Decision, Pg. ID 777.) Because the second decision relies on the first, the Court will examine USCIS's decision in Geralys's petition, then proceed to Kathryn's petition to determine whether USCIS's decision was arbitrary, capricious, or out of accord with applicable law.

A

The first question is whether the decision to deny Geralys's petition was arbitrary

5

or capricious. It was not. USCIS articulated a reasonable explanation for denying the petition. So it holds up under this court's review.

Although Geralys and Erick submitted some material in support of the legitimacy of their marriage, suspicious circumstances surrounding much of the material undercut its value. For instance, the couple provided printouts from a bank showing they had a joint checking account. But the account had a balance of $0.00 and an address where neither of them had ever claimed to reside. Another joint checking account existed, but they had opened it eleven months into their marriage, just one month before their January 2009 interview with USCIS. They also appeared to have a shared cell phone plan. But this too they opened eleven months after they had been married and just two weeks before their interview. A similar issue plagued the magazines they provided—they were all January 2009 issues. The couple had a joint car insurance policy, but it only insured Erick; Geralys was an excluded driver. And the policy only became effective three days before their interview.

This pattern of recently opened shared or joint accounts played out for the majority, if not the entirety, of the documentary evidence they submitted in support of their marriage. It was problematic from the agency's perspective because it came into being mere weeks before the couple's I-130 interview. The letter requesting the couple to appear for the interview instructed them to bring supporting evidence of their relationship, such as documentation regarding joint assets or liabilities. (CAR, Doc. 11, Pg. ID 1201.) The fact that most of the couple's supporting documentation came into being just before the interview suggests an eleventh-hour rush to substantiate the

6

relationship. And, against the facts of Geralys's relationship with Felix—becoming pregnant with him shortly after marrying Erick, living with him at the Rubicon Place address while still married to Erick—USCIS concluded that the preponderance of the evidence showed that Erick and Geralys had not entered into a bona fide marriage. (*Id.* at Pg. ID 1068.)

In short, USCIS considered the evidence for Geralys's petition, but found it inadequate to countervail the contrary evidence that suggested their marriage was not bona fide for immigration purposes. The record supports the agency's explanation for denying the petition. That makes the agency's decision neither arbitrary or capricious.

B

USCIS based its decision to deny Kathryn's petition on its finding that the marriage between Geralys and Erick was not a bona fide relationship for immigration purposes and that they likely got married solely to obtain immigration benefits. The next question is whether the agency's denial of Kathryn's petition holds up under the APA's deferential review. It does, for the reasons that follow.

1

Section 204(c) of the INA requires the Attorney General to deny a petition by an immigrant who has "previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). In other words, federal law leaves no room for an agency to approve an otherwise lawful petition if the

7

intended beneficiary has used marriage to skirt the immigration laws and obtain an immigration benefit.

The immigration agency must base its determination of marriage fraud on substantial and probative evidence. *E.g., Bangura*, 434 F.3d at 487. The "substantial and probative evidence" standard requires a court to examine all the relevant evidence, direct and circumstantial, and determine whether that evidence, viewed in its totality, reveals to a high probability that that marriage was fraudulent. *Matter of P. Singh*, 27 I. & N. Dec. 598, 607 (BIA 2019). The quantum of evidence that satisfies this standard is less than "clear and convincing evidence," but more than a "preponderance of the evidence." *See Makhamreh v. Att'y Gen. Dep't of Just.*, No. 3:18-CV-227, 2020 WL 6146593, at *7 (S.D. Ohio Oct. 20, 2020). If substantial and probative evidence supports the agency's decision, a reviewing court will affirm. *Id.*

The question, then, is whether substantial and probative evidence supports the agency's finding of marriage fraud. It does. In ruling on Kathryn's petition, USCIS delved into the record surrounding Geralys's petition. And in that review, it discovered the suspicious timing of almost all of Geralys's and Erick's documentary evidence— much of it had come into being almost a year after they had been married, but just in time for their interview. The absence of signs of a shared financial life or a shared "emotional" or "family" life suggests the couple founded their relationship on reasons other than seeking a bona fide marriage. *Sinadinovski v. INS*, 92 F.3d 1186, *3 (6th Cir. 1996). *See also Lutwak v. United States*, 344 U.S. 604, 611 (1953) (the common understanding of marriage is that two parties undertake to establish a life together); *Bark v. INS*, 511 F.2d 1200, 1201

(9th Cir. 1975) (a marriage is a sham marriage if the bride and groom do not intend to establish a life together at the time they are married).

More problematic was Geralys's association with the Rubicon Place address. Her connection to that residence indicates fraud for two reasons. First, she lived there with Felix while still married to Erick. Second, Geralys did not tell USCIS about the Rubicon Place address. Both these facts strongly indicate fraud. As it concerns the extramarital relationship, the Rubicon Place property manager confirmed that Geralys had lived there with Felix from February 2008 – one month after she had married Erick. The property manager did not recognize pictures of Erick. (CAR, Doc. 11, Pg. ID 810.) And Geralys does not deny that she was romantically involved with Felix. A married person's involvement with another romantic partner – especially when that fact is concealed, as here – strongly suggests that the marriage is fraudulent. *Oddo v. Reno*, 175 F.3d 1015 (4th Cir. 1999) (it is reasonable to conclude that a marriage was entered into to evade immigration laws when the couple attempted to conceal that they had separated and the husband was involved with another woman); *Singh*, 27 I. & N. Dec. at 609 ("Evidence that the parties have other romantic partners, with whom they may have children, is also a significant consideration, especially when these facts are either not disclosed or are deliberately concealed."). So does the deliberate misleading or deceiving immigration officials about where one lives. *Singh*, 27 I. & N. Dec. at 609. ("evidence that the parties knowingly and deliberately attempted to mislead or deceive immigration officials regarding their cohabitation, joint finances, or other aspects of the marriage strongly indicate[s] fraud"). Thus, the circumstances surrounding the Rubicon Place address

support the agency's finding that the marriage was fraudulent.

Plaintiffs argue, with some supporting evidence, that the Rubicon Place lease did not begin in February 2008, as it reflects in the record, but actually began in February 2009. That may be accurate as it applies to the lease provided, but it does not contradict the USCIS's report that the landlord independently "stated that [Geralys] had lived [on Rubicon Place] along with Felix Ramirez . . . from February 2008, up to the date of contact (December 21, 2009)." (CAR, Doc. 11-2, Pg. ID 1047.) But even accepting that Geralys did not live with Felix until February 1, 2009, that means she signed the lease with him just two days before she participated in the USCIS interview meant to evaluate the bona fides of her marriage to Erick. (*Id.* at 1047.) Either scenario, then—whether she lived with Felix almost immediately after her marriage to Erick, or whether she planned to move in with Felix even as she took part in an interview designed to gauge the integrity of her marriage to Erick—bears the signs of a fraudulent marriage. *Singh*, 27 I. & N. Dec. at 609.

The existence of another residence, which Geralys failed to disclose, also indicated fraud: the Woodbridge Boulevard address. It is true that Geralys averred she had rented the Woodbridge residence on behalf of a relative. (CAR, Doc. 11-3, Pg. ID 379-80.) But affidavits alone generally fall short of overcoming evidence of marriage fraud without objective documentary evidence to corroborate those claims. 8 C.F.R. § 204.2(a)(1)(i)(B)(5) ("Affidavits should be supported, if possible, by one or more types of documentary evidence . . . ."). Regardless, a residence leased under her name implicates the issues of cohabitation and the mingling of legal responsibilities, which are relevant to assessing whether the marriage was fraudulent or not. The failure to inform USCIS of such

10

information indicates fraud. *Singh*, 27 I. & N. Dec. at 609.

For all these reasons, substantial and probative evidence supports the finding that Erick's marriage to Geralys was fraudulent, and entered into for the purpose of evading immigration laws. 8 U.S.C. § 1154(c). Consequently, the agency had no choice but to deny Kathryn's later petition. *Id.* Accordingly, the agency did not act in an arbitrary or capricious manner, and its decision was in accord with the applicable laws. *Sholanke v. United States Citizenship & Immigr. Servs.*, 854 F. App'x 23, 29 (6th Cir. 2021).

2

Plaintiffs argue that the BIA decisions on both petitions on the same day were arbitrary and capricious because they were conflicting. Their argument proceeds this way: for Geralys's petition, the BIA simply found that the evidence failed to meet the applicable burden of proof (preponderance of the evidence), but for Kathryn's petition, the BIA went further and found that the Geralys-Erick marriage was formed solely to evade immigration laws (an analysis subject to the more demanding "substantial and probative evidence" standard). The two decisions, they claim, were "completely at odds" and arbitrary and capricious. (Doc. 13, Pg. ID 1351.)

This argument fails to appreciate the breadth of § 204(c). The text's plain language does not foreclose application of the § 204(c) bar when a prior denial, based on a failure to establish a bona fide marital relationship, does not at the same time make the further determination that the marriage was fraudulent. *Matter of Pak*, 28 I. & N. Dec. 113, 116–17 (BIA 2020). The statute applies to beneficiaries who "[have] previously been accorded" preference status and beneficiaries who "[have] sought to be accorded" preference status.

11

8 U.S.C. § 1154(c). Both these categories indicate that the agency's § 204(c) review is backwards-looking. And the "sought to be accorded" category reasonably includes beneficiaries who have tried and failed to be accorded preference status. So the statute permits USCIS to review a beneficiary's complete record, including failed attempts to obtain preference status, to determine if his efforts to become a citizen through marriage are in accord with the law. And whenever it becomes clear that there is substantial and probative evidence of an attempt to enter into a marriage to evade immigration laws, § 204(c) applies. *Id.* at 117. *See also* 8 C.F.R. § 204.2 (instructing that the agency will deny a petition that contains substantial and probative evidence of a fraudulent marriage, regardless of whether the beneficiary received the benefit, as long as evidence of the attempt is contained in his file).

Given the breadth of the § 204(c) bar, and the lack of a temporal constraint on when the § 204(c) review takes place, the agency did not err when it concluded that Erick's marriage to Geralys was made for the purpose of evading the immigration laws. USCIS thus properly denied Kathryn's petition under § 204(c).

## CONCLUSION

For the reasons above, the Court **GRANTS** the Attorney General's motion for summary judgment (Doc. 18) and **DENIES** Plaintiffs' motion for summary judgment.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
By: _____
JUDGE MATTHEW W. McFARLAND